```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LIBERTY MUTUAL
INSURANCE COMPANY,

                        Plaintiff,           COMPLAINT

        - against -                          Case No.:

COLUMBUS CONSTRUCTION CORP.,                 ECF Case
CANAL ASPHALT, INC., and
AUGUST M. NIGRO,

                        Defendants.
-----------------------------------------------------------X
```

**BRIEANT**

**07 CIV. 2857**

Plaintiff, Liberty Mutual Insurance Company ("Liberty" or "Surety"), as and for its Complaint against Defendants Columbus Construction Corp., Canal Asphalt, Inc., and August M. Nigro, alleges as follows:

## PARTIES

1. Liberty is a corporation organized and existing pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

2. Upon information and belief, defendant Columbus Construction Corp. ("Columbus"), is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Mount Vernon, Westchester County, New York.

3. Upon information and belief, defendant Canal Asphalt, Inc. ("Canal"), is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Mount Vernon, Westchester County, New York.

4. Upon information and belief, defendant August M. Nigro ("Nigro" and with "Columbus" and "Canal" collectively referred to as "Defendants" or "Indemnitors") is a domiciliary of the State of New York, residing at 4 Taylor Road, Elmsford, New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this matter involves citizens of different states and the amount in controversy exceeds $75,000.00.

6. Venue is properly laid in this court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Liberty's claims herein arose in this district.

## FACTS COMMON TO ALL COUNTS

7. Liberty is engaged in the business of issuing surety and other types of civil bonds.

8. In or about September 1996, Defendants requested that Liberty consider issuing surety bonds on behalf of Columbus in connection with certain construction contracts into which Columbus would enter in the future.

9. Upon information and belief, Nigro is the president of Columbus.

10. As a condition to the issuance of bonds on Columbus's behalf, Liberty required that Defendants execute a General Agreement of Indemnity ("GAI") in favor of Liberty.

11. On or about September 12, 1996, Defendants executed such a GAI.

12. One of the primary purposes of the GAI is to ensure that Liberty is indemnified for any and all losses, costs and expenses which it may incur as a result of having issued bonds on behalf of a contractor such as Columbus.

1052576.3

13. Consequently, the second paragraph of the GAI provides, in pertinent part, that the Defendants:

> shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bonds; or (2) by having executed or procured the execution of any Bonds; or (3) by reason of the failure of the Principals or Indemnitors to perform or comply with any of the covenants and conditions of this Agreement; or (4) in enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Principals and Indemnitors promptly, upon demand by the Surety, whether or not the Surety shall have made any payments therefore. In the event of any payment by the Surety, the Principals and Indemnitors further agree that . . . the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

14. On or about March 29, 1999, the City of New York Department of Design and Construction ("NYCDDC") entered into a written agreement with Columbus for Columbus to furnish all labor and materials necessary to perform resurfacing with 1½ asphaltic concrete wearing course and installation of pedestrian ramps, at designated streets within the boroughs, and installation of new curbs with sidewalk where directed within the designated streets together with all work incidental thereto city wide – PIN 85099HW0017C, Contract No. HWCRESF99 (the "NYCDDC Project").

1052576.3

15. On or about July 17, 2000, Trump Briarcliff Manor Development LLC ("Trump") entered into a written agreement with Columbus for Columbus to perform excavation work (the "Earthwork Contract") in connection with the construction of the Trump National Golf Club in Briarcliff Manor, New York (the "Trump Project").

16. On or about November 1, 2000, Trump entered into a written agreement with Columbus for Columbus to perform infrastructure site work (the "Infrastructure Contract") in connection with the Trump Project.

17. In specific reliance upon Defendants' execution of the GAI and the obligations and responsibilities which they assumed thereunder, Liberty executed several surety bonds on behalf of Columbus including the following performance and payment bonds (the "Bonds"):

| | |
|---|---|
| Bond No.: | 15-007-991 ("NYCDDC Payment Bond" and "NYCDDC Performance Bond") |
| Project: | NYCDDC Project |
| Obligee: | City of New York |
| Penal Sum: | $7,846,000 |
| Date Issued: | March 4, 1999 |
| | |
| Bond No.: | 15-011-362 ("Earthwork Payment Bond" and "Earthwork Performance Bond") |
| Project: | Earthwork Contract #0013 – Trump National Golf Club, Briarcliff Manor, NY |
| Obligee: | Trump |
| Penal Sum: | $2,000,000 |
| Date Issued: | January 31, 2001 |
| | |
| Bond No.: | 15-011-363 ("Infrastructure Payment Bond" and "Infrastructure Performance Bond") |
| Project: | Site Work Contract # 0029 – Trump National Golf Club, Briarcliff Manor, NY |
| Obligee: | Trump |
| Penal Sum: | $6,600,000 |
| Date Issued: | January 31, 2001 |

18. On or about September 14, 2000, Liberty received a claim against the NYCDDC Payment Bond from A-Plus Masonry, Inc. ("A-Plus") alleging that Columbus

failed to pay $114,992.36 for labor supplied by A-Plus to Columbus on the NYCDDC Project.

19. On or about February 15, 2002, A-Plus commenced a lawsuit in the New York Supreme Court, Queens County against Liberty, among others, alleging, *inter alia*, Liberty's breach of its obligations under the NYCDDC Payment Bond (the "A-Plus Litigation").

20. Following its investigation into the merits of the A-Plus claim, on or about October 12, 2006, Liberty paid A-Plus $25,000 in full and final settlement of the A-Plus Litigation and bond claim.

21. On or about August 6, 2001, due to an ongoing dispute over timely payment of requisitioned funds on the Trump Project, Columbus served a three-day Notice to Terminate upon Trump and, on August 9, 2001, Columbus ceased working on the Trump Project.

22. As a result, Trump asserted performance claims against Liberty under the Earthwork Performance Bond and the Infrastructure Performance Bond (collectively the "Trump Bonds") demanding that Liberty complete Columbus' outstanding work on the Trump Project.

23. In response to the Trump bond claims, Liberty conducted an investigation into the merits of the claims and Liberty's rights and obligations under the Trump Bonds.

24. Following its investigation, based on its own findings and the representations of Columbus, Liberty declined to complete Columbus' work on the good faith belief that Trump had breached its contractual obligations to Columbus and wrongfully terminated the Earthwork Contract and Infrastructure Contract.

25. Subsequently, Trump commenced suit against Columbus and Liberty in the New York Supreme Court, Westchester County, in an action entitled <u>Trump Briarcliff Manor</u>

1052576.3

Development, LLC v. Columbus Construction Corp. and Liberty Mutual Insurance Company, under Index Number of 01-12562 (the "Trump Litigation").

26. In the Trump Litigation, Trump alleged, *inter alia,* that Columbus and Liberty breached their respective obligations under the Earthwork Contract and Infrastructure Contract and the Trump Bonds.

27. Both Columbus and Liberty answered Trump's Complaint with Liberty asserting various surety defenses as well as adopting the defenses of Columbus, its bond principal.

28. Following a non-jury trial, the Honorable Kenneth W. Rudolph, issued a verdict dated November 4, 2005, awarding Trump damages against Columbus in the amount of $1,577,428 plus interest and against Liberty and Columbus, jointly and severally, in the amount of $434,522 plus interest (the "Trial Decision").

29. On or about July 14, 2006, Liberty filed a Notice of Appeal seeking to appeal, *inter alia*, that portion of the Trial Decision awarding Trump damages against Liberty in the amount of $434,522.

30. On or about July 24, 2006, Trump filed a Notice of Cross-Appeal seeking to appeal, *inter alia*, the Trial Decision, to the extent that it found that Liberty is not liable for all of the same damages for which the Court found Columbus liable.

31. In accordance with the Trial Decision, Trump made a post-trial application for an award of attorneys' fees and related costs against both Columbus and Liberty.

32. By Order dated September 6, 2006, the Court rendered a post-trial decision awarding Trump attorneys' fees of $820,892.30 plus interest against Columbus and

1052576.3

6

$495,057.48 plus interest against Columbus and Liberty, jointly and severally ("Post-Trial Decision").

33. On February 20, 2007, Liberty filed a Notice of Appeal seeking to appeal the Post-Trial Decision awarding Trump $495,057.48 plus interest against Columbus and Liberty, jointly and severally.

34. The Trump Litigation was ultimately settled on or about February 28, 2007, with Liberty agreeing to pay $1,500,000 in exchange for a full and final release and satisfaction of its performance obligations to Trump under the Trump Bonds.

35. Accordingly, to date, Liberty has paid losses in the amount of $1,500,000 by virtue of having issued the Trump Bonds on behalf of Columbus.

36. Additionally, as a direct result of Trump's bond claims, Liberty was obliged to and did retain the services of legal counsel and a consultant to advise and assist it in the investigation, evaluation, defense and/or other resolution of those claims and to protect and enforce Liberty's rights under the Trump Bonds and the GAI, thereby incurring counsel fees, consultant fees, and other costs and expenses.

37. Through February, 2007, Liberty has incurred $184,174.35 in costs and expenses including, but not limited to, attorneys' fees and consultants' fees, and continues to incur such costs, as a result of having executed the Trump Bonds on behalf of Columbus.

### FIRST CAUSE OF ACTION

38. Liberty repeats and reasserts the allegations contained in paragraphs 1-37 with the same force and effect as if set forth at length herein.

39. Pursuant to the second paragraph of the GAI, Defendants agreed to exonerate, indemnify and keep indemnified Liberty against any and all liability for losses Liberty might incur as a result of having executed bonds on behalf of Columbus.

7

1052576.3

40. To date, Liberty has paid losses of $1,525,000 as a result of having executed bonds on Columbus' behalf.

41. The Defendants have failed to indemnify Liberty for any portion of this amount, despite due demand.

42. The Defendants are in breach of the GAI.

43. As a result of the Defendants breach of the GAI, Liberty has incurred losses as set forth above in the sum of $1,525,000.

44. Accordingly, the Defendants are liable to Liberty on the First Cause of Action for damages in the amount of $1,525,000.

## SECOND CAUSE OF ACTION

45. Liberty repeats and reasserts the allegations contained in paragraphs 1-44 with the same force and effect as if set forth at length herein.

46. Pursuant to the second paragraph of the GAI, Defendants further agreed to indemnify Liberty for all costs and expenses, including attorneys' fees and consultant fees, which Liberty may incur by virtue of issuing bonds on behalf of Columbus.

47. Through February, 2007, Liberty has incurred $184,174.35 in costs and expenses, including, but not limited to, attorneys' and consultants' fees, as a result of having executed the Trump Bonds on behalf of Columbus.

48. Despite due demand, the Defendants have failed to indemnify Liberty for any portion of its costs and expenses.

49. The Defendants are in breach of the GAI.

50. As a result of Defendants' breach of the GAI, Liberty incurred costs and expenses as set forth above in the sum of $184,174.35.

51.     Accordingly, the Defendants are liable to Liberty on the Second Cause of Action for damages in the amount of $184,174.35.

### THIRD CAUSE OF ACTION

52.     Liberty repeats and reasserts the allegations contained in paragraphs 1-51 with the same force and effect as if set forth at length herein.

53.     Liberty continues to incur costs and expenses, including attorneys' fees and consultants' fees, as a result of having executed the Trump Bonds and in protecting and enforcing its rights under the GAI, including the prosecution of the within action.

54.     The Defendants have failed and, as a result, it is anticipated that they will continue to fail to indemnify Liberty for the costs and expenses, including attorneys' fees and consultants' fees, which Liberty shall incur.

55.     The Defendants are in breach of the GAI.

56.     As a result of the Defendants' continuing breach of the GAI, Liberty will continue to sustain damages in an amount to be determined.

57.     Accordingly, the Defendants are liable to Liberty on the Third Cause of Action for damages in the as-yet undetermined sum of costs and expenses, including attorneys' fees and consultants' fees, to be incurred by Liberty as a result of the issuance of the Bonds.

### FOURTH CAUSE OF ACTION

58.     Liberty repeats and reasserts the allegations contained in paragraphs 1-57 with the same force and effect as if set forth at length herein.

59.     Pursuant to its common-law right of indemnification, Liberty, as surety, is entitled to indemnification from its principal, Columbus, for all of the losses it has incurred as a result of having executed bonds on behalf of Columbus.

60.     To date, Liberty has paid losses of $1,525,000 as a result of having executed bonds on behalf of Columbus.

61.     Accordingly, Columbus is liable to Liberty on the Fourth Cause of Action for damages in the amount of $1,525,000.

**WHEREFORE**, Liberty demands judgment as follows:

a.      on the First Cause of Action, against Defendants in the amount of $1,525,000

b.      on the Second Cause of Action, against Defendants in the amount of $184,174.35;

c.      on the Third Cause of Action, against Defendants in an amount to be determined;

d.      on the Fourth Cause of Action, against Columbus in the amount of $1,525,000;

e.      all of the foregoing with interest, costs and disbursements; and

f.      awarding Liberty such other and further relief as the Court deems just and proper.

Dated: April 4, 2007

WOLFF & SAMSON PC

By _____
DARRYL WEISSMAN (DW-7369)
ERIC J. LEVINE (EL-3758)

One Boland Drive
West Orange, N.J. 07052
(973)325-1500

1052576.3